IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILSON GORRELL,
      Plaintiff

v.

UNITED STATES,
      Defendant

Case No. 3:11-cv-8-KRG-KAP

## Order, Report and Recommendation

### Order and Recommendation

Defendant's motion to dismiss, docket no. 17, should be granted. Plaintiff's motion for extension of time to file a response to the motion to dismiss, docket no. 20, is denied as moot because he filed his response at docket no. 24. Plaintiff's latest motion for counsel, docket no. 25, is denied. Local Civil Rule 10(c) provides that "[a]bsent special circumstances, no motions for the appointment of counsel will be granted until after dispositive motions have been resolved." There are no special circumstances here: to the contrary, plaintiff is exceptionally fluent in presenting his position. Plaintiff's motion to lift the stay of discovery, docket no. 26, is denied as meritless because there is no need to conduct discovery in a dismissed action.

### Report

Plaintiff Gorrell was imprisoned at F.C.I. Loretto from May 2006 to February 2010. Gorrell filed a 79-page complaint with 272 pages of exhibits (approximately 50 pages of which is his administrative tort claim that is incorporated as the first 50 pages of the complaint) that can be summarized very briefly: Gorrell is serving terms of imprisonment imposed by the United

States District Court for the Southern District of New York and United States District Court for the District of Columbia for Gorrell's roles in two different distributions or conspiracies to distribute methamphetamine.  Gorrell is HIV-positive.  Gorrell brings this FTCA claim against the United States for its alleged negligence in designating him to F.C.I. Loretto and not to a different prison where his HIV-positive status would not be as apparent to his fellow inmates as it would have been at F.C.I. Loretto.  That is not because Gorrell contracted HIV there, nor is it because the Bureau failed to treat his HIV at Loretto.  Gorrell's theory of liability is that Loretto is overcrowded and Gorell lived in an small crowded open dormitory with up to seven cellmates: as a result of not wanting his cellmates to infer that he was HIV-positive from the medications he would be taking, Gorrell forewent taking medications for HIV during his stay at Loretto.  He asserts that that constitutes harm caused to him by the United States' negligence.

Even at first blush, an inmate alleging a legal claim based on the prison he was assigned to has a very doubtful case.  Except in the case of extreme conditions of confinement not alleged about Loretto, see Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that a challenge to the procedure used to transfer inmates to supermax prison was cognizable under Due Process Clause, but ruling against the challenge on the merits), a duly convicted

prisoner has no federally enforceable right to be confined in any particular prison, <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983) (a prisoner has no constitutional right to be housed in a particular prison or state); <u>Meachum v. Fano</u>, 427 U.S. 215 (1976) (a prisoner has no liberty interest in which prison he is housed), or at any particular custody level within the prison. <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995)(inmate did not, by being given 30 days in the R.H.U., suffer any "atypical, significant deprivation" that would implicate the Due Process Clause); <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir.1997)(inmate placed in administrative segregation for 15 months, without a hearing, deprived of no interest protected by Due Process Clause). A negligence action requires as one of its elements that the defendant owe some legal duty to plaintiff. The United States owed (and owes) Gorrell no legal duty to house him in any particular prison. That is so even if, as Gorrell alleges, one of the judges who sentenced him made particular recommendations as to where Gorrell should be imprisoned, because it is the Bureau of Prisons and not the sentencing judge that has the legal duty to classify and designate federal inmates. <u>See</u> 18 U.S.C.§§ 3621, 4081. That remains so if the prison that housed Gorrell is not the optimum either for him or even for the Bureau of Prisons. In short, the FTCA is not a "best practices" mandate. To the contrary, 28 U.S.C.§ 2680(a) of the FTCA prohibits any claim:

based on the exercise or performance [of], or the failure to exercise or perform a discretionary function or duty on the part

3

of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

See United States v. Gaubert, 499 U.S. 315 (1991); Merando v. United States, 517 F.3d 160 (3d Cir.2008). Merando is particularly instructive. The plaintiff in Merando alleged that the United States was liable for negligently failing to detect and remove a dead tree that fell onto the roadway in a national park, killing members of plaintiff's family. The Court of Appeals replied that the inquiry under Section 2680(a) was whether a controlling statute or regulation required the Park Service to remove trees in some particular manner and those regulations were not complied with: if not, the Park Service's decisions about how to manage hazardous trees "**and its execution of those decisions**, clearly fall within the discretionary function exception." 517 F.3d at 168 (my emphasis). No statute or Bureau of Prisons policy prevents the Bureau from designating Gorrell, or any other inmate, to Loretto because he is HIV-positive. To the contrary, 18 U.S.C.§§ 3621, 4081 and the Bureau's administrative policies implementing the statutes (see Program Statement 5100.08, docket no. 18, Exhibit 1-1 to Herbin-Smith Declaration) are as clear as can be that the designation of inmates is the Bureau's discretionary decision.

Gorrell argues that his particular circumstances compel a different result. His reasoning that the United States owes him a nondiscretionary legal duty not to have placed or kept him at Loretto is based on an extended syllogism: 1) Loretto is

4

overcrowded and houses more inmates in a cell than other prisons; 2) taking his pills in his cell would expose his condition to his cellmates; 3) his cellmates would learn Gorrell's HIV-positive status from examining the pills that Gorrell takes or from outright questions about Gorrell's reason for taking pills; 4) his cellmates would be hostile toward Gorrell if they learned of his HIV-positive status and; 5) this hostility would adversely affect Gorrell's status in prison; 6) therefore it is reasonable for Gorrell to stop taking his medication, despite the harm Gorrell knew it would cause him; 7) therefore the United States is liable for harm resulting from Gorrell's decision to stop taking his medication.

There are two glaring flaws to Gorrell's sorites. First, that Gorrell's injury allegedly occurred as a result of his designation to Loretto does not make his designation other than a discretionary decision. See e.g. Cohen v. United States, 151 F.3d 1338 (11th Cir.1998)(negligent classification of inmate as low risk, resulting in his assignment to minimum security institution where he was able to attack plaintiff, remains discretionary decision exempted from FTCA liability under Section 2680(a)), cert. denied, 526 U.S. 1130 (1999). Gorrell's injury is therefore not compensable under the FTCA.

Second, Gorrell asserts incorrectly that his designation (or the failure to re-designate him to a place with more private cells or to give him a private cell at Loretto) was the legal cause

5

of his harm. The United States has a duty to provide Gorrell with basic human needs and eliminate **unreasonable** risks of harm to an inmate. Helling v. McKinney, 509 U.S. 25, 30 (1993); see also Wilson v. Seiter, 501 U.S. 294, 304 (1991). Privacy, as defined by the comfort level of the inmate, is not one of the basic human needs the United States must provide Gorrell. Gorrell repeatedly stresses the lack of privacy at Loretto and the inquisitiveness of the inmates in his cell as the reason why the obvious and suggested expedient of having Gorrell take his HIV medication in the medical department instead of in his cell would not have prevented his inmates from finding out about his HIV-positive status. (Gorrell throughout his pleading asserts his HIV-positive status, which causes the United States to note that because his cellmates would have had access to his complaint and his voluminous exhibits, Gorrell can hardly accuse the United States of causing the disclosure, see docket no. 17 at 28 n.4. It is unnecessary to discuss the comparative negligence concept obliquely raised thereby.) It is hard to imagine the psychology of the inmate that Gorrell hypothesizes: a cellmate who would be so inquisitive as to question Gorrell about his HIV-positive status from his attendance at the pill line each day, but who would not (or did not) ask Gorrell an outright question about his medical status otherwise. Even simpler, it is unbelievable that in the confined quarters of any prison, federal, state, or local, Gorrell's fellow inmates

6

(whether cellmates or not) would neither ask Gorrell an outright question about his medical status nor be able to infer his medical status from any other cue than Gorrell's medications. But accepting for a moment all of Gorrell's premises, Gorrell implies (at page 18 of his Complaint *et seq.*) that what the United States should have done is designate him to one of six prisons with two or three-inmate cells instead of to Loretto. Gorrell further says, at page 54 of his Complaint, that once he arrived at his current prison (F.S.L. Jesup) in March 2010, he felt comfortable enough with his single cellmate that he began taking his HIV medication (presumably in his cell.) That is well for Gorrell.

But Gorrell's satisfaction with his current cellmate does not make the Bureau of Prisons' decision to place him in an eight-inmate cell unreasonable or the cause of any injury to Gorrell. The Bureau of Prisons does not have any insight into where, on the scale from open dormitory to single cell, it would be reasonable for an inmate to stop refusing to take available medication for a life-threatening illness out of a concern for his reputation. Gorrell implies that eight in a cell is too many, while F.C.I. Allenwood with three-inmate cubicles and F.C.I. Butner with two-inmate rooms would have been acceptable, and Jesup is just right. But the Bureau of Prisons could conclude and has reasonably concluded that a rational inmate would be better off taking available medication for a life-threatening illness even if that

risked danger to the inmate's reputation. Further, assuming that the Bureau of Prisons had a duty to take Gorrell's benefit/risk analysis into account, it would have been reasonable for the Bureau of Prisons to reject Gorrell's conclusions. It is scarcely believable that a single cellmate would be less curious about Gorrell or his medical conditions than would six or seven. To the contrary, one reason the Bureau of Prisons can use eight-inmate cells is that up to a point there is a benefit to good order from having seven cellmates available to enforce conformity on the eighth, while a single cellmate would have even more reason to investigate Gorrell for his own security. All the lawsuits arising out of cellmate murders that I have handled arose from two-inmate cells, not dormitories. In other words, if Gorrell's single roommate at Jesup were markedly more antipathetic toward HIV-positive inmates than the average inmate, Gorrell's position might well be worse, not better than at Loretto. And even if the Bureau of Prisons had given Gorrell a single cell, it would not have solved the privacy problem that Gorrell alleges is the cause of his harm, because one of the most coveted status symbols in prison is a single cell (outside the RHU, that is) and inmates are intensely aware of and curious about what it takes to get one.

Anyone with the time to read plaintiff's complaint through several times in search of a colorable claim, as I have, will no doubt be struck by the repetition of Gorrell's motif that

8

events completely under his control are somehow someone else's fault: Gorrell's initial decision to get involved in drug trafficking in D.C. was because he was "at what was perhaps the most vulnerable time in his life," a vulnerability that was caused by unfeeling, discriminatory employers (unfortunately never redressed because of Gorrell's inadequate civil attorneys); Gorrell's arrest was due to a "questionable traffic stop," but see United States v. Gorrell, 360 F.Supp.2d 48 (D.D.C.2004); Gorrell's decision to violate the terms of his pretrial release order in D.C. and "flee to New York" was because the prospect of prison "terrified" him; Gorrell's involvement in drug trafficking in New York was because he was in New York helping a friend with a project and the friend led him astray; the implied harshness of Gorrell's sentence was because his D.C. attorney and indeed "all parties" advised him not to cooperate and accept responsiblity, and so on.

The same misperception of cause and effect is evident in Gorrell's theory of liability. The proximate cause of any injury to Gorrell from his failure to take medications is not the Bureau of Prisons' designation decisions or the crowded cells at Loretto, it is Gorrell's calculation that the benefits of the medication never denied him were outweighed by his estimation of the costs. Or, as Gorrell himself puts it more crudely at page 68 of his complaint, Gorrell was gambling on whether he could forego medication long enough that Gorrell's decision to not medicate

would lead the Bureau to accede to Gorrell's request for a transfer. The reason why a federal inmate's choice to play "chicken" with a life-threatening infectious disease does not imply liability on the part of the United States should be obvious. The complaint should be dismissed without leave to amend[1].

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: March 8, 2012

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Wilson Gorrell, Reg. No. 56609-054
Jesup Federal Satellite Low
2600 Highway 301 South
Jesup, Georgia 31599

---

1. Gorrell also alleges, Complaint at 33-40, that he was denied re-designation by a vague conspiracy between the warden and his case manager in retaliation for writing politicicans and lawyers about his situation, even though Gorrell alleges that the case manager had already made the operative decision to thwart Gorrell's re-designation (in August 2008) before Gorrell went public (and was told that his transfer was being "prevented" in June 2009.) Just as using the word "retaliation" does not state a claim for retaliation, using the word "prevented" does not imply that there was some change in the status quo that was canceled by a decision, retaliatory or otherwise. Gorrell alleges no facts from which it could be inferred that anyone was ever considering his transfer, much less facts that allow the inference that it was prevented.

10